# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
No. 13-869V
**Filed: October 22, 2015**

| | |
|---|---|
| * * * * * * * * * * * * * * | **UNPUBLISHED** |
| MATTHEW RUPPERT, | |
| Petitioner, | |
| v. | Attorneys' Fees and Costs; |
| | Reasonable Basis |
| SECRETARY OF HEALTH | |
| AND HUMAN SERVICES, | |
| Respondent. | |
| * * * * * * * * * * * * * * | |

<u>Thomas P. Gallagher</u>, Thomas Gallagher Law Firm, Somers Point, NJ, for petitioner.
<u>Debra A. Filteau Begley</u>, U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

**Gowen**, Special Master:

On November 1, 2013, Matthew Ruppert ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10 – 34 (2012)[2] (the "Vaccine Act" or "the Program"). Petitioner alleged that as a result of receiving the Human Papillomavirus ("HPV" or "Gardasil"), Hepatitis A, and/or influenza ("Flu") vaccines on December 8, 2012, he developed Multiple Sclerosis ("MS"). Petition at Preamble; Amended Petition at Preamble. Petitioner's counsel, Thomas P. Gallagher, has requested to withdraw as

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

counsel due to health reasons.  Pet. Status Report, filed May 4, 2015.  Prior to withdrawal of his representation, he has sought payment of interim attorneys' fees and costs.  Pet. Motion for Interim Attorneys' Fees and Costs; Pet. Amended Motion for Interim Attorneys' Fees and Costs. Respondent has objected based on her contention that petitioner has failed to show a reasonable basis for his claim, and petitioner has filed a response to respondent's objections.  The undersigned finds that petitioner has demonstrated a reasonable basis for his petition, and is therefore entitled to an award of reasonable interim attorneys' fees and costs.

## I.      Procedural History

Petitioner filed a petition for compensation on November 1, 2013, wherein he alleged that as a result of receiving the Gardasil vaccination on December 8, 2012, he developed MS. Petition at Preamble.  Pursuant to the initial order, petitioner was ordered to complete the filing of his medical records by December 18, 2013, and to file an expert report by March 11, 2014. Initial Order, December 11, 2013.  Petitioner filed a Statement of Completion on December 12, 2013, and filed an amended petition on August 14, 2014, alleging that in addition to the Gardasil vaccine he received on December 8, 2012, Hepatitis A and Influenza vaccines administered the same day also contributed to the development of his MS.  Amended Petition at Preamble. Following four extensions of time, petitioner filed the expert report of Dr. David Axelrod on September 11, 2014.  Pet. Ex. 14.  Dr. Axelrod, a clinical immunologist, opined that petitioner's vaccinations caused his MS.  Id.  In his report, Dr. Axelrod set forth a theory of how vaccines could cause petitioner's MS by applying a "consensus approach" developed by Dr. Frederick Miller to determine the plausibility of assigning causality of a disorder to environmental factors. Id. at 1-2.  In addition, Dr. Axelrod noted an appropriate temporal association between vaccination and the onset of petitioner's symptoms, and noted that he did not find an alternative explanation for petitioner's disorder.  Id. at 2-3.

On January 26, 2015, respondent filed her Rule 4(c) report stating that the case was not appropriate for compensation due to petitioner's failure to provide "a sufficient medical opinion or theory establishing a causal link between his vaccinations and his alleged injury."  Resp. Rule 4(c) Report at 7.  Respondent did not assert that there was a lack of reasonable basis to file the claim.  Along with her Rule 4(c) report, respondent also filed the expert report of Dr. See Mar, a neuro-immunologist. Resp. Ex. A.  Dr. Mar opined that petitioner does not meet the diagnostic criteria for MS, and that he more likely suffered from radiographically isolated syndrome ("RIS") and migraine headaches that predated the December 8, 2012, vaccinations.  Id. at 4-5, 8-9.

Following a status conference on March 9, 2015, the court ordered petitioner to file a supplemental expert report and updated medical records addressing: (1) whether petitioner had MS or RIS; (2) whether petitioner's lesions pre-dated the receipt of the vaccine; (3) whether petitioner has ongoing symptomatology related to his diagnosis; and (4) whether additional medical records exist to support petitioner's claim of a chronic condition.  Order, filed Mar. 9, 2015.

On March 30, 2015, petitioner requested an extension of time to obtain the opinion of a neurologist because Dr. Axelrod, an immunologist, did not feel able to address the specific

neurological issues raised in the court's order.  Pet. Status Report, filed Mar. 30, 2015.  Shortly thereafter, on May 4, 2015, petitioner filed a status report indicating that his attorney was withdrawing as counsel and that he would informally submit an interim fee request to respondent's counsel.  Pet. Status Report, filed May 4, 2015.

Petitioner filed a second report from Dr. Axelrod on May 6, 2015, which did not respond to the questions raised in the March 9, 2015, status conference.  See Pet. Ex. 42.  Petitioner also filed additional medical records on June 1, 2015.  These medical records included the results of an examination by Suzanne Brown DO and a brain MRI performed May 26, 2015.  See Pet. Ex. 46, 47.  On July 22, 2015, petitioner filed a motion for interim attorneys' fees and costs.  Petitioner filed an amended motion for interim attorneys' fees and costs on October 7, 2015.

## II.     Analysis

### A.  Attorneys' Fees and Costs: Good Faith and Reasonable Basis

Section 15(e) of the Vaccine Act governs attorneys' fees.  42 U.S.C. § 300aa-15(e).  When awarding compensation on a petition, the special master "shall also award" reasonable attorney's fees and costs.  Id. at §15(e)(1)(A)-(B).  Even when compensation is not awarded, the special master "may award" reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  Id. at § 15(e)(1).  Respondent does not challenge that petitioner's claim was filed in good faith.  Resp. Opposition to Pet. App. for Interim Attorneys' Fees and Costs at 7 ("Resp. Opp").  Therefore, the only question at issue is whether petitioner had reasonable basis to pursue his claim.

### B.  Reasonable Basis

The Vaccine Act does not define "reasonable basis," and case law in the Federal Circuit does not address how courts should interpret the Vaccine Act's reasonable basis standard.  Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 402 (Fed. Cl. 2012).  However, the Court of Federal Claims has held that the statutory language of 42 U.S.C. § 300aa-15(e)(1)(B) grants the special master "maximum discretion in applying the standard."  Id. at 402.  Accordingly, the term has been interpreted differently at various points during the history of the Vaccine Program.  See Silva v. Sec'y of Health & Human Servs., 2012 WL 2890452, *9 (Fed. Cl. Spec. Mstr. June 22, 2012) (summarizing the special masters' treatment of the meaning of "reasonable basis" over time).  The court has historically been "quite generous" in finding a reasonable basis, and in recent years the term has been liberally interpreted to foster payment of attorneys' fees.  Turpin ex rel. v. Sec'y of Health & Human Servs., 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Apr. 26, 2005); Silva, 2012 WL 2890452 at *12.

While the burden is on petitioner to affirmatively demonstrate a reasonable basis, "petitioner need not establish entitlement to compensation, or even that a claim is likely to succeed."  McKellar v. Sec'y of Health & Human Servs., 2012 WL 362030, *6-7 (Fed. Cl. Spec. Mstr. Jan 13, 2012) (reversed on other grounds).  In determining reasonable basis, the court looks "not at the likelihood of success, but more to the feasibility of the claim."  Di Roma v.

Sec'y of Health & Human Servs., 1993 WL 496981, *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993).
Indeed, while petitioner must furnish "some evidence" supporting the claims in the petition, the
evidentiary showing is less than a preponderance of the evidence.  Chusiano v. Sec'y of Health
& Human Servs., 2013 WL 6234660, *1, 13 (Fed. Cl. Spec. Mstr. Oct. 25, 2013).

The reasonable basis requirement is an objective standard based upon an evaluation of
the totality of circumstances.  Mckellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297,
303 (Fed. Cl. 2011) (citing Hamrick v. Sec'y of Health & Human Servs., 2007 WL 4793152, *4
(Fed. Cl. Spec. Mstr. Jan. 9, 2008)).  To determine reasonable basis, courts have considered
factors including "factual basis, medical support, jurisdictional issues, and the circumstances
under which a petition is filed."  Hiland v. Sec'y of Health & Human Servs., 2015 WL 4985247,
*2 (Fed. Cl. Spec. Mstr. July 31, 2015) (citing Turner v. Sec'y Health & Human Servs., 2007
WL 4410030, *6 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

Claims have been found to lack reasonable basis where there is a complete lack of factual
or medical support submitted in support of the claim, or there are other serious problems with the
underlying medical or factual support.  See,e.g. Brown ex rel. Brown v. Sec'y of the Dept. of
Health & Human Servs., 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (no
reasonable basis where there were "[n]o medical records . . . filed whatsoever.  No analysis either
by a medical expert or by a treating physician has been filed.  Based on the dearth of evidentiary
filings, no record has been presented under which a special master could find that the petitioner
was even injured."); Murphy v. Sec'y of Health & Human Servs., 30 Fed. Cl. 60, 62 (Fed. Cl.
1993) (no reasonable basis where the medical and other written records contradicted the claims
in the petition, and the expert opinion submitted was based on this unreliable version of facts);
Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375, 1377 (Fed. Cir. 1994) (an expert
report "grounded in neither medical literature nor studies" that was simply "unsupported
speculation" did not provide a reasonable basis).

### C.   Reasonable Basis for Petitioner's Claim

In this case, respondent asserts that there are "crucial gaps" in petitioner's claim, and that
"petitioner has not and cannot satisfy *Althen* prongs 2 and 3."  Resp. Opp. at 16.  Respondent
states that "although petitioner has submitted an expert report, Dr. Axelrod has not addressed the
court's specific questions [posed in the March 9, 2015, Order] regarding petitioner's correct
diagnosis, whether petitioner's lesions are in an area of his brain that would produce the speech
disturbance that manifested in early January 2013, or whether petitioner's lesions could have pre-
existed petitioner's December 8, 2012 vaccinations."  Id.  Respondent also asserts that petitioner
has failed to establish that he suffered six months of residual symptoms, as required by the Act,
because "[p]etitioner's speech disturbance resolved on January 18, 2013, and he has not reported
any similar persisting symptoms."  Id.  Respondent notes that petitioner consulted with at least
two neurologist but "notably refrained" from offering the opinion of either one to address the
gaps.  Id.  The foregoing objections bear on the ultimate merit of the claim, rather than whether
there is a reasonable basis for the claim.  However, as described above, the standard for finding a
reasonable basis is significantly lower than the standard for finding entitlement.  In fact,
petitioner need not even establish that a claim is *likely to succeed.*  McKellar, 2012 WL 362030,
*6-7.  Thus, the fact that petitioner has not yet fully addressed the questions raised in the March

9, 2015 status conference and has not yet demonstrated entitlement to compensation does not demonstrate a lack of reasonable basis so long as there is "some evidence" supporting his claims. Chusiano, 2013 WL 6234660, at *1. Claims of the relationship between vaccines and demyelinating diseases, including MS, are frequently seen in this court with varying opinions on both sides as to causation, including immunology opinions similar to that submitted by Dr. Axelrod.

The March 9, 2015, Order set forth several issues that "needed to be addressed in light of the expert reports from both parties and respondent's Rule 4(c) Report." Order, filed Mar. 9, 2015, at 1. However, despite the fact that the court identified several issues requiring clarification, this is not a case that is so devoid of factual or medical support as to lack a reasonable basis. While petitioner's claim may not be "likely to succeed" should he fail to address these questions in the future, petitioner has already submitted two expert reports from Dr. Axelrod, a qualified immunologist, which set forth a basis for a connection between the administration of vaccines and MS. See Pet. Ex. 14, 42. In addition, petitioner has supplemented the record with medical reports that tend to support his claim and address some of the issues raised in the status conference order. See Pet. Ex. 15-39, 43-45. Dr. Axelrod was unable to address the court's more specific questions posed after the March 9, 2015 status conference because he is not a neurologist. Accordingly, as respondent observes, petitioner's counsel consulted with at least two neurologists. The fact that petitioner's counsel ultimately did not submit an opinion from a neurologist is likely due to the fact that his sudden withdrawal as counsel is due to health reasons, and he was not in a position to follow through on obtaining such a report. He did however, arrange for capable counsel to take over the file and to further develop the claim.

In addition, on June 1, 2015, petitioner filed additional medical records which included the results of an examination by Suzanne Brown DO and a new brain MRI performed May 26, 2015. See Pet. Ex. 46, 47. These records address the questions—raised in the March 9, 2015 status conference—of whether petitioner suffered an isolated or chronic event after his vaccination, and whether he currently suffers from residual symptoms. The examination performed by Suzanne Brown provides some evidence that petitioner continues to suffer residual symptoms. Her assessment report from May 21, 2015, states that there has been "some numbness of his right thigh and foot," and notes "[i]nattention and memory issues" and "reported cognitive impairments that have caused him to withdraw from college." Pet. Ex. 46 at 2, 4. The brain MRI performed May 26, 2015, supports petitioner's contention that he suffers from MS, rather than RIS. The MRI showed a lesion 6 cm in maximal diameter with 4 mm focus of abnormal solid enhancement in the left precentral gyrus. Pet. Ex. 47. The radiologist reported that this lesion is a new lesion since the exam on December 7, 2013, and makes considerably more likely the diagnosis of MS as opposed to a clinically isolated syndrome. Id.

Petitioner has submitted the expert opinion of a qualified immunologist, has supplemented the record with medical reports relevant to his claim, and has submitted medical records that support his assertion that he has suffered six months of residual symptoms. The most recent records, in particular the brain MRI, appear to support the diagnosis of MS rather than a clinically isolated syndrome. Accordingly, petitioner has shown a reasonable basis for the

filing of this petition. Respondent has not asserted that this petition was not filed in good faith, so the requested fees and costs are granted.

## I.      Conclusion

On July 22, 2015, counsel for petitioner, in contemplation of his withdrawal as counsel, submitted an initial fee petition claiming attorney's fees of $28,755.00 costs paid by counsel of $1,579.11, costs paid by petitioner of $3,400.00, and unpaid costs of $1,507.50. Subsequently, on October 7, 2015, counsel submitted an amended petition claiming an additional $4,680.00 in attorneys' fees for time spent since the initial fee petition as well as additional costs of $9,480.00 which represented the time billing of Sylvia Chin Caplan who is the successor attorney on this case and whose billing represented her time spent in preparing a brief in reply to respondent's brief objecting to the payment of attorney's fees.

Counsel has claimed an hourly rate of $300 an hour which is reasonable given his years of experience and long standing work in this program. He has also submitted detailed time records for the claimed hours. I find that the fees claimed in the initial fee petition are reasonable. However, the attorneys' fees claimed for Mr. Gallagher in the supplemental petition appear to be somewhat excessive given his planned exodus from the case. Accordingly, I will reduce that request to $3,000.

Finally, the billing of Ms. Chin Caplan's attorney time as unpaid costs will not be awarded as costs at this time. This bill may be resubmitted by her at the conclusion of this case as part of her claim for attorneys' fees in the case.

Accordingly, an award shall be made as follows:

**(1) in the form of a check jointly payable to petitioner and petitioner's attorney, Thomas Gallagher, in the amount of $34,841.61 for attorneys' fees and costs paid by counsel.**

**(2) in the form of a check payable to petitioner, Matthew Ruppert, for $3,400.00 as reimbursement for costs paid by him.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accord with this decision.[3]

**IT IS SO ORDERED.**

s/ Thomas L. Gowen
Thomas L. Gowen
Special Master

---

[3] Pursuant to Vaccine Rule 11 (a), the parties can expedite entry of judgment by each party filing or by jointly filing a notice renouncing the right to seek review.