# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 13-869V
### Filed: November 6, 2015

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | **UNPUBLISHED** |
| MATTHEW RUPPERT, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Attorneys' Fees and Costs; |
| | * | Reasonable Basis |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * | * | |

## ORDER DENYING MOTION FOR RECONSIDERATION[1]

**Gowen**, Special Master:

On October 27, 2015, respondent filed a motion for reconsideration[2] of the undersigned's October 16, 2015 Decision Awarding Interim Attorneys' Fees and Costs ("Decision"). Respondent opposes petitioner's application for interim attorneys' fees and costs, and argues that petitioner's claim is not supported by a reasonable basis. Respondent asks the court to reconsider the decision based on the fact that petitioner obtained, but did not file, an unfavorable report from a neurologist, Dr. Marcel Kinsbourne, prior to obtaining and filing the expert report from Dr. David Axelrod, an immunologist.

### I.        Respondent's Motion for Reconsideration

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] See Rules of the Court of Federal Claims ("RCFC"), Appendix B, Vaccine Rule 10(e).

In her motion for reconsideration, respondent notes that petitioner contacted a neurologist, Dr. Kinsbourne, in early 2014, before contacting Dr. Axelrod.[3]  Resp. Motion for Reconsideration at 2 ("Resp. Motion"); Pet. Motion for Interim Fees & Costs, Ex. A at 4-7.  Dr. Kinsbourne prepared a report in May 2014, which petitioner's counsel provided respondent a copy of.  Resp. Motion at 2; Pet. Motion for Interim Fees & Costs, Ex. D at 2.  Petitioner did not file Dr. Kinsbourne's report.

Although Dr. Kinsbourne's report has not been filed, respondent asserts that it "relates directly to the gaps in petitioner's case."  Resp. Motion at 2.  Respondent states that "[g]iven that petitioner is currently in possession of an expert report that states that he cannot establish that his vaccine caused his condition, he should be required to file such evidence before this court issues a determination on reasonable basis."  Id. at 3.  While respondent acknowledges that petitioner is not obligated to file all expert reports he receives, she argues that petitioner has given the impression that he could obtain neurological support for his claim but has been prevented from doing so because of his withdrawal, which does not comport with the fact that he already has obtained a neurological report that he chose not to file.  Id. at 3 n.5.  In essence, because of the existence of Dr. Kinsbourne's unfavorable report, respondent questions whether petitioner could ultimately ever obtain expert support from a neurologist, and because she concludes that he cannot, she argues that there is no reasonable basis for the claim.  See id. at 1.  Respondent argues that "[a] determination of whether a case is supported by reasonable basis is based entirely on what evidence currently exists, not what evidence might later exist."  Id. at 3 n.5 (citing McKellar v. HHS, 101 Fed. Cl. 297, 305 (2011)).[4]

Respondent asserts that this case is controlled by Perreira v. HHS, 33 F.3d 1375 (Fed. Cir. 1994), and describes the Federal Circuit as noting, "that once petitioner becomes aware that he cannot obtain expert support for his claim, his case no longer is supported by a reasonable basis."  Resp. Motion at 3 (citing Perreira, 33 F.3d at 1377).  In the present case, respondent argues that petitioner did not have a reasonable basis to proceed with his case after obtaining Dr. Kinsbourne's report—assuming, arguendo, that there was a reasonable basis at the outset.  Resp. Motion at 3.  Respondent states that Dr. Axelrod's subsequent report does not provide sufficient evidentiary support to establish a reasonable basis because his report only addresses Althen prong one.  Id.  Accordingly, respondent requests that the court vacate its decision, order petitioner to file Dr. Kinsbourne's report, and issue a new decision taking into consideration the record including Dr. Kinsbourne's report.  Id. at 4.

## II.    Discussion

A motion for reconsideration is governed by Vaccine Rule 10(e)(3), which states "[t]he special master has discretion to grant or deny [a motion for reconsideration], in the interest of justice."  RCFC, Appendix B, Vaccine Rule 10(e).  The undersigned is not persuaded to alter the Decision Awarding Interim Attorneys' Fees and Costs in this case.  The fact that petitioner's counsel obtained an unfavorable report from Dr. Kinsbourne in the early stages of the case does not preclude petitioner from establishing a reasonable basis through other evidentiary support

---

[3] Petitioner's counsel also indicated to respondent, and the billing records support, that he also obtained an oral report from another neurologist, Dr. Sami Khella.  Resp. Motion at 2 n.2; Pet. Motion for Interim Fees & Costs, Ex. D at 3.

[4] As discussed below, the undersigned does not believe that respondent's citation to McKellar is accurate for the proposition cited.

which, as set forth in the Decision, petitioner has done.  Accordingly, respondent's motion for reconsideration is denied.

Petitioner is not obligated to file every expert report that he obtains, and the fact that petitioner obtained an unfavorable report does not preclude petitioner from seeking a favorable report from another source or establishing a reasonable basis through other evidentiary support.  Petitioner obtained a report from Dr. Kinsbourne in May, 2014, but did not file it.  See Pet. Motion for Interim Fees & Costs, Ex. D at 2.  Subsequently, in August, 2014, petitioner's counsel contacted Dr. Axelrod and received a report from him in September, 2014, which was filed.  See Pet. Motion for Interim Fees & Costs, Ex. A at 7-8.  Dr. Axelrod's report set forth a theory of how vaccines could cause Multiple Sclerosis ("MS"), and noted that he found the temporal association between petitioner's vaccination and the onset of petitioner's symptoms appropriate.  Pet. Ex. 14 at 2-3.  Following a status conference on March 9, 2015, the court ordered petitioner to file an expert report addressing several substantive issues that needed to be addressed.[5]  Order, filed March 9, 2015, at 1.  Although petitioner has not yet filed an expert report addressing the issues raised, he did file additional medical records including an examination by Suzanne Brown DO and a brain MRI performed May 26, 2015.  See Pet. Ex. 46, 47.  These records were responsive to the issues of whether petitioner had MS, and whether he has ongoing symptomatology.  See Decision at 5.

Respondent asserts that "[a] determination of whether a case is supported by reasonable basis is *based entirely on what evidence currently exists*, not what evidence might later exist."  Resp. Motion at 3 n.5 (citing McKellar v. HHS, 101 Fed. Cl. 297, 305 (2011)).  The McKellar case does not support this assertion.  Rather, the court in McKellar explained how the assessment of reasonable basis based on the evidentiary record may evolve through different stages in a case.  In McKellar, the special master initially awarded interim fees to petitioner after reviewing the evidence, stating that "[p]etitioner's medical records disclosed no evidence of a valid claim for compensation" yet finding that "more is required to justify refusal to award reasonable attorneys' fees."  McKellar v. HHS, 2011 WL 3425606, *1-*2 (Fed. Cl. Spec. Mstr. June 3, 2011).  On review, the Court of Federal Claims interpreted the special master's decision as having applied a presumption of a reasonable basis existing, which it found to be legal error because the burden is on the petitioner to affirmatively establish a reasonable basis.  McKellar, 101 Fed. Cl. 297 at 305.

On remand, the special master again awarded interim fees, and clarified that the statements in her original decision were meant to express that "as the record stands, it could not furnish grounds for an award of compensation."  McKellar v. HHS, 2012 WL 362030, *10 (Fed. Cl. Spec. Mstr. Jan. 13, 2012) (reversed on other grounds).[6]  With regard to the development of the evidentiary record, she explained that "[i]n the early stages of a case, it is understood that the claim is unproven.  In the late stages of a case, the claim must be proved, or it will be dismissed.  Reimbursement of fees and costs will not be granted beyond the time it is clear that the necessary proof is not forthcoming.  The determination of that point in time in any given case depends on many facts and circumstances and the judgment of the special master, at least in the first instance."  Id. at

---

[5] These issues were: 1) whether petitioner had MS or RIS; (2) whether petitioner's lesions pre-dated the receipt of the vaccine; (3) whether petitioner has ongoing symptomatology related to his diagnosis; and (4) whether additional medical records exist to support petitioner's claim of a chronic condition. Order, filed Mar. 9, 2015.

[6] Reversed by McKellar v. HHS, 2012 WL 1884703 (Fed. Cl. 2012) (finding that sufficient grounds for award of interim fees did not exist under Avera v. HHS, 515 F.3d 1343 (Fed. Cir. 2008).

*13.  With regard to expert reports in particular, the special master stated "[a]s time goes on, a case that was deemed to have a reasonable basis at the outset may be found to lack a reasonable basis after *several years* in which no expert has been found and no expert report, or a deficient expert report, has been filed."  Id. at *7 (citing Browning v. HHS, 2012 WL 3943556 (Fed. Cl. Spec. Mstr. Sept. 27, 2010) (emphasis added).

The special master's explanation on remand in McKellar also supports the undersigned's conclusion that the present case is distinguishable from Perreira because it is in an earlier stage. In Perreira, the expert opinion that formed the basis of the claim and the testimony presented at *hearing* was found by the special master to be "unsupported by either medical literature or studies, and therefore, of no value in establishing causation in-fact."  Perreira, 33 F.3d at 1376 (referencing Perreria v. HHS, 1992 WL 164436 (Fed. Cl. Spec. Mstr. June 12, 1992).  "In the absence of other evidence the special master found that the expert opinion alone did not provide a reasonable basis to support the claim."  Id.  The special master awarded attorneys' fees and costs only up to hearing, and the Federal Circuit affirmed, holding that once petitioners had reviewed the expert opinion upon which their case depended, they no longer had a reasonable basis for claiming causation-in-fact.  Id. at 1377.  Importantly, the Perreira cases addressed the question of whether petitioner had a reasonable basis *to proceed to hearing*.  See Perreira, 1992 WL 164436 at *2.  The court's discussion of the fact that the expert's opinion was legally insufficient to establish causation in-fact must be read in light of the stage of the case.  Id.

In her motion for reconsideration, based on the contents of Dr. Kinsbourne's report, respondent questions whether petitioner could ultimately ever obtain a favorable expert opinion from a neurologist.  Resp. Motion at 1.  Respondent states that Dr. Axelrod's report "does not provide sufficient evidentiary support to establish reasonable basis because his report only addresses *Althen* prong one, and is absolutely silent on *Althen* prongs two and three, which are required for petitioner to establish a viable claim."  Id. at 3.  As in her original response to petitioner's motion for interim attorneys' fees and costs, respondent again notes the evidentiary gaps that are "potentially dispositive of petitioner's case."[7]  Id. at 2 n.1.

As set forth in the Decision, the remaining evidentiary gaps bear on petitioner's ultimate ability to prove causation in-fact, but do not at this stage of the case preclude finding that petitioner has established a reasonable basis.  See Decision at 4-5.  As the special master explained in McKellar, petitioner is not expected to have all elements of his claim proven at all stages of the case, and the determination of when it is clear that the necessary proof is not forthcoming is in the judgment of the special master.  McKellar, 2012 WL 362030 at *13.  The fact that petitioner obtained an unfavorable report from Dr. Kinsbourne very early on should not preclude him from seeking a favorable one from a different source.  Indeed, counsel did subsequently obtain a favorable report from Dr. Axelrod, which set forth a theory of how vaccines could cause MS.  In addition to being in earlier stages, the fact that petitioner has obtained Dr. Axelrod's report further makes this case unlike Perreira, where petitioner appears to have only presented one completely speculatory expert opinion at hearing.  Respondent is correct in noting that there remain outstanding issues in this case that petitioner would need to prove in order to establish entitlement to compensation, as

---

[7] According to respondent, these are 1) whether petitioner's condition began before his vaccination, or 2) whether his symptoms of aphasia could be connected to his alleged neurological injury, as well as whether the symptoms petitioner complained of in May 2015 were caused by his vaccination.  Resp. Motion 2 n.1.

discussed in the March 9, 2015 status conference.  However, the undersigned does not agree that the existence of Dr. Kinsbourne's unfavorable report necessarily indicates that petitioner could never ultimately obtain a favorable expert neurology report, particularly in light of the subsequently filed medical records which appear to strongly support the diagnosis of MS.  See Decision at 5.  Given counsel's abrupt decision to withdraw from the case in May, 2015, and the fact that petitioner has already filed reports from Dr. Axelrod, as well as additional medical records addressing some of the outstanding substantive issues, the time has not yet arrived where it is clear the necessary proof is not forthcoming.

## III.    Conclusion

After notifying the court of his intent to withdraw as counsel in this case, Mr. Gallagher filed additional medical records supportive of petitioner's claim.  These additional medical records are derived from ongoing treatment which could not have been considered in any early report by Dr. Kinsboure.  Mr. Gallagher also arranged for other capable counsel to enter an appearance.  In light of these records and the special circumstances surrounding Mr. Gallagher's withdrawal from this and other vaccine cases for health reasons, I conclude that there is a reasonable basis and that Mr. Gallagher's fees should be paid as previously ordered and thereby conclude his involvement and interest in this case.  The motion for reconsideration is **DENIED**.

**IT IS SO ORDERED.**

s/ Thomas L. Gowen
Thomas L. Gowen
Special Master